Napton, judge,
delivered the opinion of the court.
The only question presented by this record, arises out of the refusal of the court to give an instruction asked on behalf of the boat, and the giving an instruction for the plaintiffs King and Fisher. The instruction given was this : “ It was the duty of the defendant to use all the means in his power to cause the wheat to be dried offer it was wet by the storm ; and if the jury believe from the evidence that the wheat
*275 might have been dried by the defendant, and he did not do it, then the defendant is liable for all damages to the wheat by reason thereof.35 The instruction refused was as follows : “If the jury believe that the wheat in question was damaged by an unavoidable accident of the river, and not by the negligence of the officers and crew of the Lynx, they ought to find for the defendants.33
The doctrine that a common carrier is responsible for all losses, except those occasioned by the act of God, or the public enemy, or such others as are expressly excepted in the bill of lading, has been uniformly maintained in this State. Daggett vs. Price & Shaw, 3 Mo. R. 264. Experience has shown the general results of this principle to be highly beneficial in the main, although, perhaps, its application in particular cases may have been harsh, and we should regret to see any departure from it. But when the carrier is held responsible, not only for every damage not occasioned by inevitable accident, but also for the consequences of such accidents themselves, in eases where any possible skill or labor could restore the value of the property injured, either in whole or in part, the doctrine, it strikes us, is carried to an extent not warranted by the law, and not justified by reason or principle of public policy.
In order to view this matter in a proper light, we must recur to the original and well settled principle—a carrier is responsible for all losses brought about by his own acts, or want of action, for every loss which could have been prevented by human exertion, with the exceptions heretofore stated. If a tempest springs up, or damage from any other quarter threatens, he is certainly to use all proper exertions to prevent loss, and when an injury has been sustained by a cause beyond his power to prevent, to use every means to prevent further injury. A damage may result to the bailment after an injury received from inevitable accident, which, although it would not have happened had not the accident occurred, yet was not necessarily the result of that accident, but might have been avoided by proper efforts on the part of the carrier. For such damage he is undoubtedly responsible, and he cannot charge it to the inevitable accident. It is the result of his own negligence. In the case of Charleston and Col, S. B. vs. Bason, (1 Harper 262, a boat grounded on an inland passage to Charleston, from a reflux of the tide, and fell over, when the bilge water ran into the cabin and injured a box of books belonging to the plaintiff. Richardson, J., said :—“ Admitting the grounding to have been accidental and unavoidable, and the carrier in no fault, yet the moment the boat heeled, the bilge water was returned towards the stern; and this the carrier was bound to know, and remove the cargo there *276 stored. The books in question, being in the cabin, could easily have been removed. The carrier is liable for bad storage and default in good keeping. The injury therefore was through negligence, and does not come within the exception of the bill of lading.”
The true question then, in such cases, must be—is the damage the result of the accident; or is it, or any portion of it, attributable to the negligence of the carrier. The defendant was certainly not responsible for the damage the wheat received by the storm; but if, after the storm j passed, the wheat, or any portion of it, was suffered to remain in the water, which could have been baled out, or when it could have been removed to another part of the boat, without interference with the rights of other shippers or passengers, a loss happening for want of such removal of the wheat or the water, is properly chargeable to the boat. 'The loss thus produced is not the effect of the accident, but is attributable to the negligence of the officers and crew of the boat. It is the duty of the carrier to take all possible care of the freight entrusted to him. His employment is to transport goods and passengers with speed and care. But to impose upon him the burthen of repairing the effects of accidents for which he is not responsible, is requiring of him a task he has never undertaken, and for which, we may presume, he has no special skill. The instruction given by the court of common pleas, imposed upon the carrier this additional task. The officers of the Lynx were required to dry the wheat which had been wet by a storm, and to use all possible means to effect this object. It will be seen at once that the task of drying several thousand bushels of wheat is not a light one, and if all the means which skill and science, and labor can bestow, are to be used in this process ; the business of the common carrier is lost sight of.
Is the master of the boat to withdraw his crew from their ordinary employments in the prosecution of the voyage, and employ them in this onerous and tedious business, totally foreign to his general duty, and utterly destructive it may be of the interests of the owners, insurers and other shippers. Would it not be most benefical to all parties concerned, that he should proceed to his port of destination with all possible despatch, where the owners or consignees of the wheat could take the necessary measures for restoring it to a sound condition ? In the case we have cited from South Carolina, it was not hinted in the opinion that it was any part of the duty of the master of the steamboat to dry the books, after they had been wet by the bilge water; but he was held responsible for not removing them before the water reached them. Sup *277 pose the case of a large assortment of dry goods shipped on one of our western boats. The boat is snagged and the goods are damaged by the water. Shall the master and crew be obliged to open the boxes, unfold the packages and pieces, and by means of artificial or natural heat undertake the tedious process of drying the goods?
The case of Bird vs. Cromwell, (1 Mo. R. 81) certainly goes very far to sustain the instruction given in this case. That case was decided in 1821, and the accident which gave rise to the suit occurred on a barge ^navigating .the Mississippi between New Orleans and St. Louis. A ’quantity of coffee, how much is not stated, was shipped on this barge at New Orleans, and became wet and damaged by an inevitable accident. The court held that it was the duty of the master of the barge to use all possible exertions to dry the coffee. It is impossible to conjecture, from the opinion, what character and degree of exertions the court had in view in giving this instruction. The facts of the case may have authorized a verdict against the boat or her owners, but the instruction approved by the court in its unqualified sense, was certainly imposing an extraordinary duty upon common carriers. Much consideration is no doubt due to the character of the navigation in which the carrier is engaged. . Whilst the general principles which govern the conduct of common carriers in ocean navigation, have been applied to the navigation of our western waters, there are cases and circumstances in which the duties of these respective classes of carriers obviously vary. So, also, the navigation of the Mississippi by keels and barges in 1820, may have been attended with different duties from those devolving on the owners and officers of steamboats at the present day. When it required from six weeks to two months to make the voyage from New Orleans to St. Louis, the officers and crew of the barge thus slowly impelled by human power, and having no intermediate points of trade, may have been subjected by the custom of the trade to a greater variety of duties than would now be held to devolve upon the class of navigators which has -succeeded them. The abstract principle, however, avowed in this opinion of Bird vs. Cromwell, we cannot consider as applicable to the circumstances of the present case.
The other judges concurring, the judgment is reversed, and the cause remanded.
Scott judge.-
There is no doubt that the master of a boat is bound to take all pos *278 sible care of the cargo, and he is responsible for every injury which might have been prevented by human foresight and prudence and competent naval skill. He is chargeable with the most exact diligence. 3 Kent 213. If, in a voyage on our rivers, a cargo sustains an injury by an inevitable accident, it is the duty of the master to use the most exact diligence to countervail the effects of it. The occurrence of the accident does not relieve him from the responsibilities of a common carrier with respect to the injured cargo. He is still bound to the strictest] diligence for the preservation of it, and to Use all reasonable exertions] to retrieve it from the consequences of the accident. But this is to bel understood that such exertions are consistent with the usages of our inland navigation. If a portion of a cargo, consisting of a variety of articles, and belonging to various owners, is injured, will the voyage be suspended to the prejudice of all others, that the injury of the one may be re-repaired ? It is obvious that, in such cases, the conduct of the master1 must be governed by the circumstances under which he is acting. The instruction of the court would require the master to delay his voyage, go ashore, and take measures for the drying of the wheat. Could the' wheat have been dryed on board the boat, proper exertions should have been used for that purpose. The instruction of the court, in my opin* ion, was too broad and indefinite.